United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

MARCUS ETIENNE, *et. al.,*

Defendants.

No. CR 17-00093 WHA

**ORDER RE SECOND RENEWED MOTION TO COMPEL OPD AND SLPSO MATERIALS**

## INTRODUCTION

In this prosecution under the Racketeer Influenced and Corrupt Organizations Act, the Violent Crimes in Aid of Racketeering Act, and other penal statutes, defendants move to compel disclosure of materials from the Oakland Police Department and the St. Landry Parish Sheriff's Office under *Brady*.

## STATEMENT

Previous orders have described the facts of this case. In short, defendant Marcus Etienne and Mario Robinson have been indicted for, among other things, a conspiracy to distribute and possess with intent to distribute marijuana as well as murder in connection with the conspiracy. The Etienne enterprise is based out of St. Martin Parish, Louisiana and allegedly operates throughout Louisiana, California, and Texas. Relevant to this order is the allegation defendant Burte Gucci Rhodes murdered victim T.T., a previous member of the Etienne enterprise, in

Oakland, at the behest of defendants Etienne and Robinson. The Oakland Police Department (OPD) investigated T.T.'s murder.

In August 2018, defense counsel submitted an *ex parte* application for the issuance of a subpoena *duces tecum* under Rule 17(c) directing the OPD to produce specified documents relating to its investigation of the homicide of victim T.T. In September 2018, the City of Oakland moved to quash the subpoena and the government joined the motion. Multiple hearings were held on the matter including an evidentiary hearing in which OPD Sergeant Richard Vass testified as to the existence of certain documents sought by the subpoena, specifically officer notes of witness interviews, which had not been produced to the defense but which the government claimed to have in its possession. Throughout the process, the government denied any "joint investigation" with OPD and instead claimed to have "adopted" the investigation from Oakland when it turned over its entire investigatory file. The government also, however, stated in its motion for joinder in OPD's motion to quash and motion to quash subpoena:

> However, even if the government did not have valid witness safety concerns, the government has no obligation to produce these reports under Rule 16. The OPD reports are not subject to Rule 16 discovery because they are "*reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.*" Fed. R. Crim. P. 16(a)(2). The Ninth Circuit held in *United States v. Fort*, 472 F.3d 1106 (2007), that Rule 16(a)(2)'s exemption from discovery extends to police reports "created prior to federal involvement but relinquished to federal prosecutors to support a unified prosecution of Defendants for the same criminal activity that was the subject of the local investigation." *Id.* at 1120. Although the government does have witness safety concerns given the nature of the charges in this case, the Ninth Circuit's "interpretation of Rule 16(a)(2) applies regardless of the content of the non-disclosed inculpatory information and regardless of the potential effect of disclosure on witness safety." *Id.* at 1110 n.1.
>
> Nor has the government waived the protections of Rule 16(a)(2) by producing redacted copies of the police reports to defendant Etienne. *Fort*, 472 F.3d at 1120. By "systematically redacting all witness locator information," the government has demonstrated that "it did *not* intentionally or voluntarily relinquish its rights under Rule 16(a)(2) to hold back this information from discovery." *Id.* at 1121 (emphasis in original).

Dkt. No. 232 at 4 (emphasis added). A December 2018 order granted the motion to quash on the ground the subpoena was too broad. The order, nonetheless, allowed defense counsel to copy and

2

inspect certain officer notes that had been lodged *in camera* pursuant to an attorney's-eyes-only protective order.

In parallel with the above, in September 2018, defense counsel submitted an *ex parte* application for the issuance of a subpoena *duces tecum* directing the St. Landry Parish Sheriff's Office to produce specific documents related to the investigation of a previous assault on T.T. as well as the homicide of another victim allegedly related to the Etienne enterprise. In October 2018, the SLPSO moved to quash the subpoena and the government joined the motion. A hearing was held on the matter following which the SLPSO produced the responsive materials in its possession for *in camera* review. A November 2018 order allowed defense counsel to review the lodged materials in the Court's jury room.

Meanwhile also in November 2018, defendants Etienne and Robinson filed a joint motion to compel disclosure in which the defense identified a number of items they had requested be produced by the government, but which the government had failed to produce. One of these items included *Brady* materials in possession of the OPD such as interviews with victim T.T. prior to his death. A December 2018 order stated, "[t]o the extent defendants move to compel answers to [requests for information], the motion is denied. As to the remaining evidentiary items raised in defendants' motion, counsel for the parties shall meet and confer by December 21, following which defendants may renew their motion with respect to any outstanding issues." The parties met and conferred on December 20, January 28, and January 30. In February 2019, defense counsel met with and sent a letter to the government requesting items that had yet to be produced including the OPD *Brady* materials. The government failed to respond. In June 2019, defendants filed a renewed motion to compel.

In June 2019, the government filed a supplemental memorandum stating Sergeant Vass was a member of the prosecution team given his assignment as an FBI Task Force Officer to the matter and that the government is thus responsible for *Brady* materials in his possession. The government, however, also contended it has no *Brady* obligation as to the rest of OPD because the OPD does not operate at the government's direction. Defendants filed a supplemental response in July 2019. Defendants then filed a second motion to compel in August 2019, requesting again,

3

among other things, the *Brady* materials in possession of the OPD and the SLPSO. The parties were able to resolve all issues except the OPD and SLPSO *Brady* materials request.

**ANALYSIS**

*Brady v. Maryland*, requires prosecutors to disclose materially exculpatory evidence in the government's possession to the defense. 373 U.S. 83 (1963). *Kyles v. Whitley* further held that the prosecution has an affirmative duty to learn of, and disclose, any favorable evidence known to "others acting on the government's behalf in the case, including the police." 514 U.S. 419, 437 (1995). In *Kyles,* petitioner Curtis Kyles petitioned for habeas relief claiming a *Brady* violation. Specifically, he contended the government failed to provide him with the following evidence: contemporaneous eyewitness statements taken by the New Orleans police following the murder in question, statements made to police by an informant who was never called to testify, and a computer printout of license numbers of cars parked at the crime scene on the night of the murder, which did not list the number of Kyles's car. *Id.* at 428–29. The government argued that because some of the favorable evidence at issue was not disclosed to the prosecutor until after trial, it should not be liable under *Brady*. *Id.* at 438. The Supreme Court of the United States ultimately held, however, that a prosecutor remains responsible for producing *Brady* evidence regardless of any failure by the police to bring it to the prosecutor's attention. *Id.* at 420.

The extent to which a police department is considered to act on the government's behalf, and accordingly, the government's obligation under *Brady* as to materials in possession of a police department has never been clearly delineated. Our court of appeals has offered some guidance as has the Office of the Deputy Attorney General. In *United States v. Price,* a prosecutor had instructed his lead investigative agent to run a criminal history check on a key witness. 566 F.3d 900, 911 (9th Cir. 2009). The prosecutor did not recall or know the results of the check and failed to tell defendant about the witness's previous acts of fraud and dishonesty. *Id.* at 903. Our court of appeals found that because the prosecutor directed the activities of the detective, he had a duty to learn of and disclose *Brady* evidence in the detective's possession. *Id.* Specifically, "if the prosecutor either failed to disclose the information or failed to discover that his *agent* knew of or possessed" *Brady* material, a violation occurred. *Id.* at 910 (emphasis

4

added). Furthermore, the Office of the Deputy Attorney General has also provided a list of factors to consider in determining the extent to which a police department or officers act on the government's behalf. These factors include: whether the prosecutor and the agency conducted a joint investigation or shared resources related to investigating the case, whether the prosecutor knew of and had access to discoverable information held by the agency, and whether the prosecutor had obtained other information and/or evidence from the agency. U.S. Dep't of Justice, Memorandum for Department Prosecutors, (Jan. 4, 2010).

Related to the instant issue is Rule 16 which allows defendants to subpoena certain documents and statements made within the government's possession, custody, or control. The main exception is that the rule "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Rule 16(a)(2). Our court of appeals has held the term "government agent" in Rule 16(a)(2) includes non-federal personnel whose work contributes to a federal criminal case. *United States v. Fort*, 472 F.3d 1106, 1113 (9th Cir. 2007). It has also held Rule 16(a)(2)'s exemption extends to police reports "created prior to federal involvement but relinquished to federal prosecutors to support a unified prosecution of Defendants for the same criminal activity that was the subject of the local investigation." *Id.* at 1120.

Here, defendants have provided various examples suggesting the OPD and SLPSO are members of the prosecution team given the intertwined nature of the OPD and FBI investigation into T.T. For example, an OPD sergeant and an FBI special agent interviewed T. T. in August 2016 together prior to his death. Furthermore, Sergeant Vass directed another OPD sergeant to send Verizon a pen register and trap/trace request on a telephone number in an effort to prevent the murder of one of the defendants. Defendants also cite to a hearing in which Detective Cormier of the SLPSO stated he was contacted by the FBI division in Oakland regarding the murder of a man allegedly related to the Etienne enterprise and that he delayed arrest of the suspect in that murder until the OPD arrested the suspect in T.T's murder.

Nonetheless, this order need not analyze the extent of the OPD's or SLPSO's

involvement with the prosecution. The government has maintained that it had no obligation to produce unredacted versions of the subpoenaed OPD reports under Rule 16 as they are "reports, memoranda, or other internal governmental documents made by an attorney for the government or other government *agent* in connection with investigation or prosecution the case" (emphasis added). The government cannot have its cake and eat it too. It cannot state in one instance that the OPD is a government agent and in the next breath state the OPD is not a government agent in an effort to skirt its *Brady* obligation. This order accordingly holds that the government must produce all *Brady* materials in the possession of the OPD. This must be done by the *Brady* deadline in the scheduling orders.

As to the SLPSO, the government has not indicated (as it has with the OPD) that the SLPSO is its agent. Accordingly, on this record, the government is not obligated to produce *Brady* materials solely in the possession of the SLPSO.

**IT IS SO ORDERED.**

Dated: October 16, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE